Please proceed, Counsel. Good morning, Your Honors. Good morning. Kaveh Erdalan, on behalf of the Respondents, Mr. Ali Nazi and Assam Nazi, File No. 7675598. And the writer is 75535836. Good morning. Your Honors, as the record may reflect, I did not represent the Respondents in the Immigration Court proceeding. I got this case a few days before the Board of Immigration Appeal was due. And I believe, if my recollection is correct, I had to even ask some flexition of time to file the brief. I spoke to him in person first when he came to the office. And I said, what's going on, what happened? And even almost a year after the case had been concluded, he had no clue what had happened in the Immigration Court proceeding. I spoke with his daughter. I don't know if she was 16 or 17 at the time. She spoke a little bit better English. She had no clue what was going on. What happened, as I think I touched briefly in my brief in this case, someone, a non-attorney, prepared an application for him, asylum application, typed it up all in English, told him sign here, go to court, go to asylum office. Obviously was denied, referred to immigration judge. The attorney who appeared on this case, and I'm not making a straightforward claim of ineffective assistance of counsel, even though I refer to it, I don't want to confuse the issues before this panel, was a state planning attorney from a Christian law center, took the case on pro bono basis. From the transcript of the proceeding, Honorable Judge Malloy, who is no longer actually in L.A., she even admonishes the attorney, what are you doing? Do you know what you're doing? What's going on? He had no clue about the procedure. There's a reference in my brief, and it's very clear even in the oral decision, that they ask a simple question from the respondent slash petitioner, and he goes on for like almost a page and a half, like 25 lines of transcript, to answer a simple question. No objection, no instruction. So not only he's confusing, I apologize, not only he's confusing, he's confusing the judge, he's confusing the interpreter. There's a reference that the interpreter is converting dates and time and events without instruction or request from the court or the attorney. Anyway, the testimony part ends, and in the testimony, I noted this, Your Honor, and I think it's very relevant to my argument. I concede right off the bat that the application and the testimony before the court are inconsistent. I don't know why it happened. All I know is there is a pattern of inconsistency here where actually is detrimental to the applicant. What he's saying in court is less sugar-coated, for lack of a better word, and more straightforward. He's saying, you know what, I wasn't detained after 1994. I didn't do anything. I wasn't tortured. I wasn't received this type of treatment. And the application, unfortunately, has lines after lines after lines of all these elaborate details or whatever. So if he were incredible, logic would tell me that he would be the one in court reading the body language from the judge or from the trial attorney that would come and say, you know what, oh, yes, I did this, I did that. They were after me. You know, I'm the number one target. I'm on the black list, red list, yellow list, whatever it is. He's just ‑‑ At this point, we must determine whether or not the adverse credibility determination is supported by evidence in the record. Would you agree that that's our charge at this point? Absolutely. Okay. So ‑‑ And that's ‑‑ I'm sorry. Go ahead. Go ahead. And that was the point I was ‑‑ I apologize. I was probably drifting away. That's the point I was trying to raise. The immigration judge has an application in front of her and a testimony that she hears through an interpreter. Whether competent or not, you can see the fact that there was a problem, constant problem, and a problem with attorney questioning the applicant slash Petitioner. So she, at the end of her hearing, she says, you know, you're incredible because your application and your testimony are inconsistent. My contention is very simple. Number one, I can see that right off the bat. Yes, it was. For two reasons, Your Honor. Number one is that if the respondent were ‑‑ if he was trying to deceive or be dishonest, again, more likely than not, my logic tells me that he would add facts that was not in his application. He would state things or he would exaggerate or, as I said, sugarcoat the evidence. He was very straightforward. No, Your Honor, I didn't receive this treatment. No, Your Honor, I wasn't incarcerated.  He got into the military. Unfortunately, I think the country report refers to that the Air Force, the Imperial Air Force, had lost more officers and soldiers compared to the other armed forces in Iran after the revolution because most of them were educated in the U.S. and, of course, at the higher levels, the officers, they were subject to scrutiny and disagreement with the Islamic government. So he's coming from that segment of the officers that the Iranian, Islamic government knew or had reason to believe they were anti‑government. Yes, he goes up on the ranks, but he didn't get any special promotion. He served so many number of years and from a lieutenant he goes up to the next level and, of course, after 15 years he becomes a major. Nothing in that career suggests that he was corroborating or he was doing anything extraordinary within the Air Force. The judge cites the fact that you became a major that shows there was no problem. There are thousands and thousands and hundreds of officers. Are you telling me that all you've got to do is stay in grade long enough and you get promoted to major in the Iranian Air Force? At that level, absolutely, Your Honor. He was not in the command and controlled. And he states that in testimony. He goes, I didn't go to the war. He was F‑18, whether repair or maintenance guy. He had no reason to be in the front line. He didn't claim that he was bombing targets or defending air base. He claimed he was out of favor. He claimed that he was targeted as being anti‑government. Out of favor for being assigned to maybe a lucrative barrack or go to some kind of unique task force. But I don't think, again, I'm not trying to present evidence that it's not before the court, but my understanding is that he just got what he was getting like everybody else. He wasn't getting anything special. Now, he claims that because of the fact that he was pro shah and there's evidence that he was pro shah, unfortunately there is an evidence that may not be before this panel. We tried to submit a late application for reconsideration to the board, and we asked for continuation of the oral argument, which was denied based on the fact that this evidence could substantiate his claim that he was connected to the former government, and he was active within that circuit. But to the credibility issue, and I'm running out of time. I want to reserve maybe a minute or so for rebuttal. The credibility issue, there are issues here, but I don't believe and I don't think this panel should really accept it as a black and white decision from the immigration judge that he was so incredible that the basic and the fundamental of his claim are void. He was in the Air Force. That claim was never disputed. The Christianity issue, in ten seconds, the Christianity issue, yes, he didn't call the pastor to testify because he didn't claim that I was persecuted in Iraq. He said, hey, I'm inclined to convert. I'm thinking to become a Christian, and that's all it was. The government makes a big deal of this Christianity. Why don't you have the pastor testify? He never claimed that he was a Christian. He never claimed that he was persecuted. He would be persecuted if he goes back now because he's a convert. But I think the forecorner, the big picture is that there was enough evidence for the court to find that as an officer of the Air Force with connection to the Iranian government or the Shas government, there was definitely fear of future persecution. I agree with you that the judge could have found that. The question now is was the judge compelled to find that? No, of course it's not compelled. And the standard of review, of course, is a substantial thing. But what I'm saying is if you read what was given at the testimony, if you read the testimony, he gives enough evidence that a judge or an asylum officer or a panel of judges would see through it that, yes, there is a credible fear. I mean, this is something I got from the prior argument. We're not talking about Mexico or Argentina or Poland. We're talking about Iran. This is one of, as Your Honor referred, acts of evil. You're talking about the government that indiscriminately goes after groups, individuals, nations for whatever reasons or for no reason at all. But, Counselor, our standard of review is limited. That's the difficulty I'm having with your argument. Your argument to us is broached as if we were making the initial determination. But now we're reviewing the determination that's already been made, and our charge is to determine whether or not there is substantial evidence to support that adverse credibility ruling. So we don't look at it as if we were the first group to look at it. I know that. That's the problem.  That's the problem. And what I'm saying is I think you have enough authority to at least remand the case and then me or someone else to go back and clean this case up because the stakes are so high. All right. Thank you, Counselor. We'll give you one minute for rebuttal. Thank you so much. May it please the Court, Joan Smiley, on behalf of the Attorney General. As Judge Rollinson observed, the issue here is whether the adverse credibility finding by the judge is adequately supported or whether the evidence compels a contrary result. I would like to just point out six inconsistencies that are major that go to the heart of the asylum claim. In the application and the declaration, Petitioner stated that he served in the Iran-Iraq War for a year. He testified he did not serve in the Iran-Iraq War because of his. Why is that major? Why does that go to the heart of his asylum claim? Well, I believe it's a major inconsistency whether someone served in a particular war or they did not. It goes to the person's credibility. And credibility has to be central to the asylum claim. So he's not asserting that he was persecuted because of going to the war, not going to the war. It had nothing to do with his asylum claim, so why is it pertinent? Well, I believe it's pertinent because part of his claim is that he was perceived as a traitor because he's pro-Western, pro-monarch, pro-Christian. This is in his terminology. This is an odd case, as opposing counsel has shown to us. If he really were trying to mislead the court, he would have stuck with all of these things which were in the application, and yet he comes to the court and he tries to answer clearly and honestly. So should we consider these to be inconsistencies, or should we look? He didn't really himself prepare that application. Well, he swore to the application both at the time it was signed and also at the hearing. The judge specifically asked, is this application true and correct? He responded, yes, that it was. But it is a very odd case that then his testimony is much more restrained, is it not? I don't believe so. I think there are, you know, these six. No, he says I wasn't in the war. Pardon me? He says I wasn't in the war. And yet previously in his detailed declaration, he says he was. You know, so which one do you believe? The second inconsistency is also significant and goes to the heart of the claim. In his testimony, he says he was arrested twice, in 1980 and 1995. In his application, he says he was arrested three times, those two and in 1997. Never mentioned that in his testimony. Well, one of them, he says, was a complete mistake. They just thought he was somebody else. Yeah, he says that. I believe he said that he had the same, a similar phone number to someone else that they were looking for. But he still very clearly says that he was arrested in 1997 in his application. And he never mentions this at all in the testimony. And that, of course, would be the most current one before the hearing. In his testimony, he says he was forced to join the military, that it was compulsory. In his application, he says he joined the military voluntarily in 1978 when the Shah was in power. But isn't that, his testimony was, yes, he joined voluntarily right after high school when the Shah was in power. But then they made him reenlist and stay. Isn't that right? Well, he, I believe he testified that he left for a particular period of time and then 14 months later he went back and served again. Another inconsistency, again, which really goes to all of these, we believe, got to the heart of the claim. He had entered the United States on a fiancé visa. And he testified that the marriage to this fiancé never occurred because first he said she was sick, and then he went on to discuss at length that it didn't happen because her family learned of his problems in Iran and they didn't want their daughter to marry him. In the declaration, he said that the marriage didn't occur because the woman is ailing and incapable of marriage. And, you know, no further description. Also, in terms of the 1997 arrest that he never testified to, his testimony, in fact, for that period, is that he had remained at home supported by his brother from 1994 to 1998, didn't work. His brother supported him. He had sold his car, and he said he raised about $5,000 that way. Also, his application and declaration say nothing about his Christian leanings or wanting to convert to Christianity or planning to convert. Yet he testified he didn't convert only because he was under surveillance, that he had done things like made a cross with flowers, which was part of his belief in Christianity, that he intended to be baptized, and he also had the pastor from the church in California at the hearing, but never asked him to testify. The judge found that these many inconsistencies and implausibilities did go to the heart of the asylum claim, that he feared persecution on the basis he stated. The judge noted that he had served one year in the military under the Shah, but that the majority of his service, actually, was under the current Islamic regime. He was promoted to an Air Force major. He got specialized training that others apparently did not get, and the judge determined that it was improbable that he would be perceived as a traitor by the military on that basis. The judge found him incredible, found that he failed to satisfy his burden of proof. We believe that that determination is supported by substantial evidence and should be upheld, because the evidence simply does not compel a contrary result here. Counsel, he's filed this motion to reopen. What is the procedure? He has a stay of removal currently. Now, would he lose that if we were to rule against him in this case? Would he be deported before his motion to reopen was heard? Well, once a mandate is issued by this court, then the government would be free to remove him. He did file a motion to reopen with the board. I believe it was July 15th, 2004. That motion is still pending. Depending on what the board does, if it denies the motion, then, of course, he would have the ability to come back to the Ninth Circuit with another petition for review. But in the meantime, your agency would be free to deport him. Unless we stayed the mandate after we made our decision. That's correct. And there would be no real basis for the court to do that. Well, to allow his motion to reopen to be heard before he was removed, isn't that a good reason? Well, he always could try to seek a stay by other means through the agency. Or if he's removed, he could still have his stay in court and return if he is successful. Would the motion to reopen be processed if he were to leave the country? Would it still be processed? I believe so, Your Honor. You know, unless counsel withdrew it. It used to be that you couldn't. But I think under the new law, if you're still here, even if you're removed, it can be heard. Are you referring to 8 U.S.C. 1105A? I don't have the number. The motion to reopen. Could the motion to reopen still be heard if the petitioner were removed? Yes, I believe so. I want more than belief. Say yes or no. Okay. I would be happy to file a supplemental memo to explain that to the court if the court wishes. We'll order it if we want it. Okay. Unless the court has any further questions, we would ask that the board's decision be upheld. Thank you. Thank you. Rebuttal. We'll give you one minute for rebuttal. Thank you. Thank you so much. I'm just going to go in a couple of items in not necessarily any significant order. The marriage issue, which, as I think the panel mentioned, it's not a substantial evidence as to the merit of the asylum claim. The application was filed on February 1999. The hearing on this case is on April 13, 2000, exactly almost 14 months later. So whether or not the wife or the fiancé told them within the 14 months that, you know what, the reason actually I didn't marry you was because of your legal problems in Iran or whatever, that could be a factor. I don't know, but, again, that could explain why, or may explain, I apologize, may explain why he didn't. Now, the Christianity, I think I went over that. He very honestly claimed I was thinking to convert. As of April 13, 2000, he was not a Christian. There is no doubt the pastor didn't testify. He would not have testified because the guy was not baptized. So I think the Christianity issue is moved. The only discrepancy is the or not the only. One of the few discrepancies remaining, in my opinion, Your Honors, are not significantly and substantially related to his claim. The claim of being a member of the Air Force, ProShaw, and subject to our motion down the line, proving that element, I think is credible. And he was honest enough to say, you know what, this is it. Whatever is on the declaration that was prepared by someone else, prepared in English, told me to sign it, it's not there. To be frank, he doesn't even know what is on his brief. As much as I try to explain to him what we are arguing, that's the reality of the system. An attorney, a paralegal, prepares a document. The client believes because of the trust or the retainer, you know, you're doing the just thing and you're advocating his position correctly. I may have something, you know, in my brief or argument that may not be completely 100 percent as what he told me to be in my brief. I mean, I've done my best to be accurate, but, of course, my position was different. I'm coming in trying to clean up a record. But I know from preparing asylum applications that you never, ever are able to do it unless the individual is fluent in the language and he or she prepares a declaration and hands them to you. So then the IJ has to do the best he or she can in terms of trying to determine, you know, whether the petitioner is credible. And the IJ is there, is able to hear the testimony, is able to observe the demeanor. And that's the problem that I have is we're now trying to second-guess the IJ when the IJ was there to actually hear the testimony. She heard the testimony, not necessarily, of course, the relevant part of the testimony, but whether or not the issues that she is raising in her decision are significant and substantial to the underlying claim. If he says, you know, my car was yellow, and then comes back and there's a picture of his car being blue, yes, that's incredible testimony. But so what? It's not the crux of his decision. Kagan. I understand. Thank you. May I apologize? I know I'm way above. Wrap up. Very good. On the motion issue that the U.S. attorney was talking about, as I understand it, if he leaves the country, even if the decision is granted, the State Department has a discretion not to allow him to return to U.S. It's an absolute discretion on their part for him to say, you know what, sorry that you missed or won your case, but, you know, we don't want you to go back. Even if the motion to reopen is granted, that's your understanding? Right. That's my understanding. Because it's the entry into U.S. is absolutely within the discretion of the State Department. So, you know, it's relevant whether the district director wants to bring him back or not. All right. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Williams v. Finn. Thank you.
judges: Fletcher Hansen, Rawlinson